IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KENNETH E. EDWARDS, II,** <br> c/o Cornerstone Law Firm <br> 5821 NW 72nd Street <br> Kansas City, MO 64151 <br><br> and <br><br> **TAALIBA Y. EDWARDS,** <br> c/o Cornerstone Law Firm <br> 5821 NW 72nd Street <br> Kansas City, MO 64151 <br><br> Plaintiff, <br><br> v. <br><br> **BETTY A. KLINEDINST, individually and as Trustee of the BETTY A. KLINEDINST IRREVOCABLE TRUST,** <br> *Dwelling or Usual Place of Abode:* <br> 31891 159th St. <br> Leavenworth, KS 66048 <br><br> Defendant. | Case No. _____ <br><br> **REQUEST FOR JURY TRIAL** |

### COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Kenneth Edwards and Taaliba Edwards, by and through their attorneys, and for their cause of action against Defendant Betty A. Klinedinst, states and alleges as follows:

### Parties and Jurisdiction

1. This is a race discrimination case under Title VIII of the Civil Rights Act of 1968, the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA"), and 42 U.S.C. § 1981.

2. Plaintiff Kenneth Edwards (hereinafter "Kenneth") is a citizen of the United States, domiciled in Raymore, Cass County, Missouri.

3. Plaintiff Taaliba Edwards (hereinafter "Taaliba") is a citizen of the United States, domiciled in Raymore, Cass County, Missouri.

4. Kenneth and Taaliba (hereinafter collectively "Plaintiffs") are husband and wife.

5. Defendant Betty A. Klinedinst, (hereinafter "Klinedinst") is a citizen of the United States, domiciled in Leavenworth, Leavenworth County, Kansas.

6. Emerald City conducts substantial and continuous business in the State of Kansas.

7. This Court has personal jurisdiction over the parties because Klinedinst is domiciled within the District of Kansas.

8. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331 as some or all of Plaintiffs' claims arise under the laws of the United States.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## Additional Factual Allegations

10. On or around October 3, 2020, Plaintiffs entered into a Residential Lease Agreement (the "rental agreement") with Klinedinst to lease therefrom the residential property located at 408 Olive St., Lansing, Kansas 66043 ("the house") to occupy the same for residential purposes (a true and accurate representation of the rental agreement is attached as Exhibit 1 and incorporated herein by reference).

11. The house is a "dwelling" pursuant to 42 U.S.C. §§ 3602(b).

12. Upon information and belief, Plaintiffs allege that although Klinedinst was party to the rental agreement, throughout their tenancy, the house was actually owned by a trust ("the Klinedinst trust").

13. Upon information and belief, Plaintiffs allege that Klinedinst is the beneficiary and trustee of the Klinedinst trust.

14. The term of the rental agreement between Plaintiffs and Klinedinst was for three (3) years, from December 1, 2020, through November 30, 2023. (*See* Exhibit 1 at 1.)

15. Plaintiffs are Black.

16. In addition to Plaintiffs, Taaliba's mother and Plaintiffs' children lived at the house.

17. Taaliba's mother and Plaintiffs' children are also Black.

18. Almost immediately upon Plaintiff's occupation of the house, Klinedinst began regularly coming to the house unannounced, walking around the perimeter, apparently inspecting the yard and the exterior of the house.

19. Throughout the first year of the lease in 2021, Plaintiffs' relationship with Klinedinst remained relatively professional, despite Klinedinst's repeated unannounced visits to the house, and despite a couple of minor disputes regarding repairs inside the home.

20. However, in approximately April 2022, Klinedinst's treatment of Plaintiffs suddenly became abusive.

21. Klinedinst began texting Plaintiffs, repeatedly complaining about the condition of the yard at the house.

22. However, Plaintiffs were maintaining the yard at the house within the requirements of the rental agreement.

23. For example, Klinedinst insisted that Plaintiffs mow the lawn once per week despite Plaintiffs' neighbors uniform opinion that Plaintiffs kept the yard in excellent condition.

24. Klinedinst also repeatedly ignored Plaintiffs' requests for necessary routine repairs at the house, including necessary repairs to toilets in the house, to the air conditioning unit, and to bathroom tiling immediately adjacent to the bathtub in the mast bathroom.

25. Then, on or around August 12, 2022, after having repeatedly ignored Plaintiffs' requests for repairs and after had repeatedly harassed Plaintiffs about her misguided opinion regarding the condition of the yard at the house, finally scheduled the toilet repairs requested by Plaintiffs.

26. Additionally, on or around August 12, 2022, Klinedinst demanded access to the house for a "top to bottom home inspection."

27. Klinedinst performed her inspection of the house on or around August 17, 2022.

28. During her inspection of the house on or around August 17, 2022, Klinedinst alleged that both an exterior light fixture and some of the cabinet doors looked like someone had been "swinging on" them.

29. Klinedinst's reference to someone allegedly "swinging" on the light fixture and cabinet doors was clearly intended as a comparison of Plaintiffs and/or their children to monkeys.

30. Klinedinst's allegation of someone swinging on the light fixture and cabinet doors was not the first discriminatory statement made by Klinedinst.

31. In approximately March 2021, only a few months after Plaintiffs took possession of the house, Plaintiffs needed Klinedinst to repair the garbage disposal in the kitchen sink.

32. When she came to inspect the garbage disposal in approximately March 2021, Klinedinst inferred to one of Plaintiffs' neighbors that Plaintiffs had clogged the garbage disposal with collard greens, a dish stereotypically associated with Black community.

33. Plaintiffs did not clog the garbage disposal with collard greens; in fact, Plaintiffs had not clogged the garbage disposal at all.

34. Plaintiffs had not told Klinedinst that they had attempted to put collard greens down the garbage disposal.

35. Rather, Plaintiffs had told Klinedinst that they had put "soft green beans" down the garbage disposal.

36. Further, on or around April 13, 2022, Klinedinst sent a text message to Taaliba, stating in part that she "underst[ood] if [Plaintiffs couldn't] afford to pay [their] rent and pay to take care of the house and yard as agreed to."

37. Prior to April 13, 2022, Klinedinst had never indicated to Plaintiffs that they had been late on rent.

38. Prior to April 13, 2022, Plaintiffs always paid their rent to Klinedinst on time.

39. Prior to April 13, 2022, Plaintiffs had never indicated to Klinedinst that they could not afford to pay their rent or that they could not afford to pay a lawncare company.

40. Additionally, in her text on or around April 13, 2022, Klinedinst expressed concern that prior to executing the rental agreement, Kenneth "did not tell [her] that [he] had injuries requiring surgery and would not be able to take care of the yard."

41. On or around July 1, 2022, Klinedinst told one of Plaintiffs' neighbors that Klinedinst's husband was "afraid of" Taaliba.

42. Then, in a text message on or around August 29, 2022, Klinedinst indicated that she would no longer deal with Taaliba directly, accusing Taaliba of "verbally and in writing abus[ing]" her, threatening to file a "restraining order" if Taaliba contacted her at all, even in writing.

43. In her text message on or around August 29, 2022, Klinedinst also made a baseless accusation that Taaliba had "*almost* sprayed [her] with disinfectant" months earlier. (emphasis provided).

44. Klinedinst's accusations of abuse by Taaliba is based solely on Taaliba standing up for herself in the face of Klinedinst's abuse and plays into the racially discriminatory trope of the "mad Black woman" in which women of color are portrayed as hysterical for simply speaking up.

45. On or around August 30, 2022, Klinedinst served Plaintiffs with a "Thirty Day Notice to Quit- For Material Noncompliance" ("Notice to Quit").

46. Klinedinst's Notice to Quit alleged twenty-five (25) different alleged deficiencies.

47. Most of the alleged deficiencies in Klinedinst's Notice to Quit were simply baseless, or at worst, not violations of the rental agreement.

48. One such allegation was that Klinedinst could not "properly" inspect the parts of the home due to "a large host of posters covering much of the walls" leading to an "extremely excessive" number of holes in the walls.

49. Notably, a substantial number of the pieces of Plaintiffs' art hanging in the house at the time of Klinedinst's inspection were Afrocentric.

50. Plaintiffs took substantial time off work and paid expenses out of pocket to either comply with or rebut Klinedinst's demands in the Notice to Quit.

51. On September 16, 2022, Klinedinst filed a Petition in the District Court of Leavenworth County, Kansas, to evict Plaintiffs, Taaliba's mother, and Plaintiffs' children from the house, and seeking far in excess of $10,000 in damages for Plaintiffs' alleged misuse of the house. *See Betty Klinedinst vs. Kenneth Earl Edwards, II, et al.*, No. LV-2022-LM-000814 (Leavenworth Cty., Kan., filed Sep. 16, 2022).

52. After a bench trial, the court denied Klinedinst's request for eviction and damages. *See id.* (filed Nov. 18, 2022).

53. Plaintiffs and their family vacated the house on or around November 24, 2022.

54. Because Plaintiffs felt that they had no other option but to vacate the house on short notice prior to the expiration of the rental agreement, they were forced to purchase a home at an inflated price, at an unfavorable interest rate, and far from their desired locale.

55. On or around December 1, 2022, Klinedinst listed the house for sale on Zillow, describing the house as "move-in ready."

56. Despite listing the home as "move-in ready", Klinedinst continued to send Plaintiffs demand for money for alleged damages to the home.

57. Specifically, on or around January 17, 2023, Klinedinst sent an email to counsel for Plaintiffs outlining her baseless claims for additional money Plaintiffs owe her to make repairs on the property.

58. As part of her January 17, 2023, email to Plaintiff's counsel, Klinedinst also threatened to report Taaliba to local authorities for assault for the incident in which Plaintiff sprayed disinfectant near Klinedinst, as well as for alleged theft of Klinedinst's personal property from the house, and for the alleged damage to the house.

59. The Klinedinst trust sold the house January 27, 2023.

60. Prior to renting the house to Plaintiffs, the Klinedinst trust and Klinedinst used the house as a rental property.

61. The Klinedinst trust has also owned another home at 912 Park Ave., Leavenworth, Kansas 66048 ("the Park Ave. house") since 1992.

62. Upon information and belief, Plaintiffs allege that the Klinedinst trust and Klinedinst use the Park Ave. house as a residential rental property.

63. Upon information and belief, Plaintiffs allege that they and their family are the first Black tenants for any property used by Klinedinst as a residential rental property.

64. Upon information and belief, Plaintiffs allege that Klinedinst has not treated any of her tenants as harshly as she has treated Plaintiffs and their family.

65. Upon information and belief, Plaintiffs allege that all of Klinedinst's conduct described herein was taken on her own personal behalf and on behalf of the Klinedinst trust.

## COUNT I
### Violation under 42 U.S.C. §§ 3601 *et seq.*
### Discrimination in Rental of Housing Based on Race

66. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

67. Plaintiffs are Black and therefore members of a protected class.

68. Klinedinst repeatedly came to the house unannounced.

69. Klinedinst made unreasonable demands of Plaintiffs with regard to the upkeep of the house that were outside the requirements of the rental agreement.

70. Klinedinst attempted to improperly evict Plaintiffs and their family based on her unreasonable demands regarding the upkeep of the house that were outside the requirements of the rental agreement.

71. Klinedinst's conduct described herein was because of Plaintiffs' membership in a protected class—to wit, their race.

72. Klinedinst's actions were unwelcome.

73. Klinedinst's conduct was severe and pervasive so as to materially affect Plaintiffs' living conditions.

74. Klinedinst's conduct was directed toward forcing Plaintiffs to terminate their lease early.

75. Plaintiffs' decision to vacate the house prior to the expiration of the lease was a reasonably foreseeable consequence of Klinedinst's conduct.

76. The conduct to which Klinedinst subjected Plaintiffs was such that a reasonable person in their situation would find it intolerable and find that vacating the house early was the only reasonable alternative.

77. As a direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have been deprived of income.

78. As a further direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have paid out-of-pocket expenses.

79. As a further direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

80. Klinedinst's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiffs, thus justifying an award of punitive damages in an amount sufficient to punish Klinedinst or to deter her and other renters from like conduct in the future.

81. Plaintiffs are entitled to recover reasonable attorneys' fees from Klinedinst as provided for in the FHA.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Klinedinst and the Klinedinst trust for economic damages, including, but not limited to back-pay and out-of-pocket expenses; for compensatory damages, including but not limited to garden variety

emotional distress; for equitable relief, including but not limited to injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT II**
**Violation under 42 U.S.C. §§ 3601 *et seq.***
**Discriminatory Statements Based on Race**

82. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

83. Plaintiffs are Black and therefore members of a protected class.

84. Klinedinst made a number of statements to Plaintiffs and to Plaintiffs' neighbors regarding Plaintiffs' rental of the house.

85. Klinedinst's comments evinced a preference to rent or not rent based on race because they evinced a regret to have rented to a Black family.

86. Klinedinst's statements were severe and pervasive so as to materially affect Plaintiffs' living conditions.

87. Klinedinst's statements were directed toward forcing Plaintiffs to terminate their lease early.

88. Plaintiffs' decision to vacate the house prior to the expiration of the lease was a reasonably foreseeable consequence of Klinedinst's statements.

89. The statements to which Klinedinst subjected Plaintiffs was such that a reasonable person in their situation would find it intolerable and find that vacating the house early was the only reasonable alternative.

90. As a further direct and proximate result of Klinedinst's statements, Plaintiffs have paid out-of-pocket expenses.

91. As a further direct and proximate result of Klinedinst's statements, Plaintiffs have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

92. Klinedinst's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiffs, thus justifying an award of punitive damages in an amount sufficient to punish Klinedinst or to deter her and other renters from like conduct in the future.

93. Plaintiffs are entitled to recover reasonable attorneys' fees from Klinedinst as provided for in the FHA.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Klinedinst and the Klinedinst trust for economic damages, including, but not limited to out-of-pocket expenses; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT III**
**Violation under 42 U.S.C. §§ 3601 *et seq.***
**Retaliation**

94. Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

95. By opposing Klinedinst's repeated unannounced visits to the house and Klinedinst's unreasonable demands of Plaintiffs with regard to the upkeep of the house that were outside the requirements of the rental agreement, Plaintiffs exercised and enjoyed granted by the FHA and therefore engaged in a protected activity.

96. Klinedinst attempted to improperly evict Plaintiffs and their family based on her unreasonable demands regarding the upkeep of the house that were outside the requirements of the rental agreement.

97. Klinedinst's attempt to improperly evict Plaintiffs and their family was coercion, intimidation, threatening, and interference with Plaintiffs on account of their protected activity.

98. Klinedinst's conduct was directed toward forcing Plaintiffs to terminate their lease early.

99. Plaintiffs' decision to vacate the house prior to the expiration of the lease was a reasonably foreseeable consequence of Klinedinst's conduct.

100. The conduct to which Klinedinst subjected Plaintiffs was such that a reasonable person in their situation would find it intolerable and find that vacating the house early was the only reasonable alternative.

101. By opposing Klinedinst's attempt to improperly evict them and their family, Plaintiffs exercised and enjoyed granted by the FHA and therefore engaged in a protected activity.

102. Klinedinst made an improper threat to file a baseless claim with law enforcement and made a baseless demand for monetary damages.

103. Klinedinst's improper threat to file a baseless claim with law enforcement and baseless demand for monetary damages was coercion, intimidation, threatening, and interference with Plaintiffs on account of their protected activity.

104. As a direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have been deprived of income.

105. As a further direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have paid out-of-pocket expenses.

106. As a further direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

107. Klinedinst's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiffs, thus justifying an award of punitive damages in an amount sufficient to punish Klinedinst or to deter her and other renters from like conduct in the future.

108. Plaintiffs are entitled to recover reasonable attorneys' fees from Klinedinst as provided for in the FHA.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Klinedinst and the Klinedinst trust for economic damages, including, but not limited to back-pay and out-of-pocket expenses; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**Violation under 42 U.S.C. § 1981**
**Race Discrimination**

109. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

110. Plaintiffs are Black and therefore members of a protected class.

111. By repeatedly arriving unannounced at the house, by making unreasonable demands of Plaintiffs with regard to the upkeep of the house that were outside the requirements of the rental agreement, and by attempted to improperly evict Plaintiffs and their family, Klinedinst

materially interfered with Plaintiffs' ability to make and enforce their contract with her—to wit, the rental agreement.

112. Plaintiffs' membership in a protected class was a but-for cause of Klinedinst's decision to materially interfere with Plaintiffs' ability to make and enforce their contract with her.

113. Klinedinst's conduct was directed toward forcing Plaintiffs to terminate their lease early.

114. Plaintiffs' decision to vacate the house prior to the expiration of the lease was a reasonably foreseeable consequence of Klinedinst's conduct.

115. The conduct to which Klinedinst subjected Plaintiffs was such that a reasonable person in their situation would find it intolerable and find that vacating the house early was the only reasonable alternative.

116. As a direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have been deprived of income.

117. As a further direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have paid out-of-pocket expenses.

118. As a further direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

119. Klinedinst's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiffs, thus justifying an award of punitive damages in an amount sufficient to punish Klinedinst or to deter her and other renters from like conduct in the future.

120.     Plaintiffs are entitled to recover reasonable attorneys' fees from Klinedinst pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Klinedinst and the Klinedinst trust for economic damages, including, but not limited to back-pay and out-of-pocket expenses; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V
## Violation under 42 U.S.C. § 1981
## Retaliation

121.     Plaintiffs re-allege and incorporate herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

122.     By opposing Klinedinst's repeated unannounced visits to the house and Klinedinst's unreasonable demands of Plaintiffs with regard to the upkeep of the house that were outside the requirements of the rental agreement, Plaintiffs opposed race discrimination and therefore engaged in a protected activity.

123.     Klinedinst attempted to improperly evict Plaintiffs and their family based on her unreasonable demands regarding the upkeep of the house that were outside the requirements of the rental agreement.

124.     Plaintiffs' protected activity was a but-for cause of Klinedinst's attempt to improperly evict Plaintiffs and their family.

125.     Klinedinst's conduct was directed toward forcing Plaintiffs to terminate their lease early.

126. Plaintiffs' decision to vacate the house prior to the expiration of the lease was a reasonably foreseeable consequence of Klinedinst's conduct.

127. The conduct to which Klinedinst subjected Plaintiffs was such that a reasonable person in their situation would find it intolerable and find that vacating the house early was the only reasonable alternative.

128. By opposing Klinedinst's attempt to improperly evict them and their family, Plaintiffs opposed race discrimination and therefore engaged in a protected activity.

129. Klinedinst made an improper threat to file a baseless claim with law enforcement and made a baseless demand for monetary damages.

130. Plaintiffs' protected activity was a but-for cause of Klinedinst's improper threat to file a baseless claim with law enforcement and baseless demand for monetary damages.

131. As a direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have been deprived of income.

132. As a further direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have paid out-of-pocket expenses.

133. As a further direct and proximate result of Klinedinst's actions and/or omissions, Plaintiffs have suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

134. Klinedinst's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiffs, thus justifying an award of punitive damages in an amount sufficient to punish Klinedinst or to deter her and other renters from like conduct in the future.

135.     Plaintiffs are entitled to recover reasonable attorneys' fees from Klinedinst pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Klinedinst and the Klinedinst trust for economic damages, including, but not limited to back-pay and out-of-pocket expenses; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

                        Respectfully Submitted,

                        CORNERSTONE LAW FIRM

                        By:  /s/ Joshua P. Wunderlich
                              Joshua P. Wunderlich D. Kan. #78506
                              j.wunderlich@cornerstonefirm.com
                              5821 NW 72nd St.
                              Kansas City, Missouri 64151
                              Telephone            (816) 581-4040
                              Facsimile             (816) 741-8889

                              ATTORNEY FOR PLAINTIFFS